**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANIE DITTO,
    *Plaintiff-Appellant,*

v.

JOHN A. MCCURDY, JR., M.D.,
    *Defendant-Appellee,*

and

PAUL S. SAKUDA, Trustee,
    *Trustee.*

No. 02-16252
D.C. No.
CV-01-00602-HG
OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, District Judge, Presiding

Argued and Submitted
November 6, 2007—Honolulu, Hawaii

Filed December 14, 2007

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY

### Bankruptcy/Dischargeability of Debts

The court of appeals affirmed a judgment of the district court. The court held that the failure to obtain informed consent, without evidence of intent to injure, does not qualify for

16423

the "willful and malicious" exception to discharge under 11 U.S.C. § 523(a)(6).

Appellant Janie Ditto sought a judgment of non-dischargeability of appellee John McCurdy's debt in bankruptcy court in Hawaii under § 523(a)(6), arguing that a malpractice judgment she previously secured against McCurdy, based in part on a theory of informed consent, constituted a debt for willful and malicious injury. Alternatively, Ditto claimed that she should be permitted to amend her complaint to object to granting McCurdy a discharge in bankruptcy, even though McCurdy was granted a discharge more than a year before her motion to amend. Ditto had obtained a final judgment that the debt was non-dischargeable in 1996, but the Hawaii Supreme Court reversed the underlying malpractice judgment in 1997, and the court of appeals remanded the case with instructions to set aside the judgment on non-dischargeability pursuant to McCurdy's motion under Federal Rule of Civil Procedure 60(b). In the interim, in 1998, the Supreme Court clarified in *Kawaauhau v. Geiger* that the § 523(a)(6) exception is confined to debts based on an intentional tort. The bankruptcy court denied Ditto's motion to amend and granted McCurdy's motion for summary judgment. The district court affirmed.

Ditto appealed, contending that *Geiger* should not be applied retroactively.

[1] The general rule is that, when the Supreme Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review. [2] When a judgment has been set aside pursuant to Rule 60(b), the case stands as if that judgment had never occurred in the first place. Thus, *Geiger*'s interpretation of willful and malicious controlled the review of this case.

[3] The failure to obtain informed consent, without evidence of intent to injure, does not give rise to a willful and

malicious injury within the meaning of § 523(a)(6). It is the breach of this duty to disclose all the material risks a patient would need to determine his or her course of treatment, and the breach's causation of physical injury, that give rise to an action for informed consent. [4] Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful. In order to qualify for the § 523(a)(6) "willful and malicious" exception to discharge, therefore, the debtor must have acted with either the desire to injure or a belief that injury was substantially certain to occur. There was no evidence that might lead a trier of fact to conclude that McCurdy had any such desire or belief. It had to be held that McCurdy's debt to Ditto was not non-dischargeable under § 523(a)(6).

[5] Rule 15(a) of the Federal Rules of Civil Procedure provides that, after the initial period for amendments as of right, pleadings may be amended only by leave of court, which leave shall be freely given when justice so requires. [6] A total bar to discharge is an extreme penalty. Given the value of finality in bankruptcy, as well as the difficulty of unscrambling an egg by effectively revoking discharge, it had to be held that the bankruptcy court did not err in denying Ditto leave to amend her complaint. The judgment of the district court had to be affirmed.

## COUNSEL

Christopher A. Dias, Schutter Dias & Smith, Honolulu, Hawaii, for the plaintiff-appellant.

Richard H. Grover, Honolulu, Hawaii, for the defendant-appellee.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Plaintiff-Appellant Janie Ditto appeals the decision of the district court affirming the bankruptcy court's grant of Defendant-Appellee John McCurdy's motion for summary judgment and denying Ditto's motion for leave to amend the pleadings.

Ditto seeks a judgment of non-dischargeability of McCurdy's debt under 11 U.S.C. § 523(a)(6), which grants an exception to discharge for any debt "for willful and malicious injury by the debtor." She argues that the malpractice judgment she previously secured against McCurdy, based in part on a theory of informed consent, constitutes a debt for "willful and malicious injury." She also argues, in the alternative, that she should be permitted to amend her complaint to object to granting McCurdy a discharge in bankruptcy, even though McCurdy was granted a discharge more than a year before her motion to amend.

We reject both arguments and affirm the district court's decision.

I

Janie Ditto is a Korean immigrant who came to the United States in 1976. She suffers from several chronic illnesses, including diabetes and hyperthyroidism. The drug treatment for her hyperthyroidism caused her breasts to flatten, and in 1986 she went to John McCurdy for breast augmentation surgery.[1] The surgery was unsuccessful, and resulted in complications requiring six additional surgical procedures over

---

[1] An extensive summary of the facts of Ditto's underlying claim against McCurdy is set forth in *Ditto v. McCurdy*, 947 P.2d 961, 968-72 (Haw. Ct. App.), *aff'd*, 947 P.2d 952 (Haw. 1997).

eleven months, during which Ditto suffered significant physical and psychological trauma.

In 1989, she filed suit against McCurdy, alleging negligence and fraud. The negligence component of her claim alleged both that McCurdy exercised inadequate care in his treatment of Ditto and that he failed to obtain informed consent by inadequately disclosing the risks of surgery. The fraud claim was based on a theory that McCurdy was under an affirmative obligation to disclose his qualifications (or lack thereof) to perform plastic surgery and failed to do so. In 1992, Ditto won a judgment of $2,788,988.31, including punitive damages, pre-judgment interest, and costs. Shortly thereafter, McCurdy both appealed to the Hawai'i Intermediate Court of Appeals and filed for bankruptcy in the bankruptcy court.

In January 1993, Ditto initiated the present adversary proceeding in the bankruptcy court, seeking a judgment of nondischargeability of McCurdy's debt arising out of the malpractice judgment under 11 U.S.C. § 523(a)(2), (4), and (6), and objecting to discharge of the debtor under 11 U.S.C. § 727(a)(4) and (a)(7).[2] In 1996, the bankruptcy court granted

---

[2] 11 U.S.C. § 727(a) provides that "[t]he court shall grant the debtor a discharge unless" one of the grounds listed in paragraphs (a)(1) to (a)(12) obtains. Ditto listed paragraphs (a)(4) and (a)(7) in her complaint, which deny discharge if:

(4) the debtor knowingly and fraudulently, in or in connection with the case—

   (A) made a false oath or account;

   (B) presented or used a false claim;

   (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

   (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including

16428                DITTO v. MCCURDY

Ditto's motion for summary judgment, holding the debt non-dischargeable under 11 U.S.C. § 523(a)(6), which grants an exception to discharge for any debt "for willful and malicious injury by the debtor." At the time, the application of § 523(a)(6) was governed in this circuit by *Impulsora Del Territorio Sur. S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir. 1986). Under *Cecchini*, the plaintiff was "not required to prove that the debtor acted with intent to injure"; rather, he needed only show that the debtor committed "a wrongful act . . . , done intentionally, necessarily produc[ing] harm and . . . without just cause or excuse, . . . even absent proof of a specific intent to injure." *Id.* at 1442.

In 1997, however, the Hawai'i Supreme Court reversed the underlying malpractice judgment with respect to liability for fraud, holding that McCurdy had no affirmative duty to disclose his qualifications. *Ditto v. McCurdy*, 947 P.2d 952, 958 (Haw. 1997). The court affirmed the finding of gross negligence and ordered the case remanded for a redetermination of punitive damages. *Id.* at 961. With the fraud count reversed, and only a judgment for negligence remaining, McCurdy made a Rule 60(b) motion before the bankruptcy court, asking it to set aside its judgment of non-dischargeability.[3] Although

---

       books, documents, records, and papers, relating to the debtor's property or financial affairs;

. . .

       (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

[3] Federal Rule of Civil Procedure 60(b) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ."

this motion was rejected by both the bankruptcy court and district court, this court remanded the case with instructions to grant the motion in 2000. *Ditto v. McCurdy (In re McCurdy)*, 2000 WL 1206003 (9th Cir. 2000) (unpublished memorandum).

In the interim, after McCurdy filed the 60(b) motion but before it was ultimately granted by this court, the United States Supreme Court, in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), clarified the meaning of 11 U.S.C. § 523(a)(6)'s exemption from discharge. It held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 62.

On rehearing in the bankruptcy court, McCurdy moved for summary judgment and Ditto moved to amend her complaint to restore the § 727 objection to discharge. The bankruptcy court granted the motion for summary judgment and denied the motion to amend. Ditto appealed to the district court, which affirmed the bankruptcy court's decision. Ditto then appealed to this court.

II

We have jurisdiction to review the decisions of the district court generally under 28 U.S.C. § 1291, and to review the decisions of the district court hearing appeals from the bankruptcy court specifically under 28 U.S.C. § 158(d). We review the district court's decision on appeal from a bankruptcy court *de novo*, giving no deference to the district judge's determinations. *Metcalf v. Golden (In re Adbox, Inc.)*, 488 F.3d 836, 839 (9th Cir. 2007); *First Ave. West Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006). We review a grant of a summary judgment *de novo*. *Metcalf*, 488 F.3d at 840; *Am. Broad. Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 827-28 (9th Cir. 2001).

## III

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Before 1998, there was some doubt as to the exact mental state required of the debtor in order for a debt to fall into this exception. Some circuits, including this circuit, interpreted § 523(a)(6) to include unintended injuries, so long as the acts themselves were deliberate, wrongful, and necessarily caused injury. *Cecchini*, 780 F.2d at 1443; *see also Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir. 1987); *First Nat'l Bank v. Franklin (In re Franklin)*, 726 F.2d 606, 610 (10th Cir. 1984) ("Appellant intended the acts that he did perform, which acts performed in the manner and under the conditions present in this particular situation necessarily resulted in the injury. That is sufficient to support a finding of willful and malicious conduct.").

In 1998, however, the Supreme Court clarified that the § 523(a)(6) exception "is confined to debts 'based on what the law has for generations called an intentional tort.' " *Geiger*, 523 U.S. at 60 (quoting *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997) (en banc)). Drawing on the Second Restatement of Torts, the Supreme Court noted that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself,' " *id.* at 61-62 (quoting Restatement (Second) of Torts § 8A cmt. a (1964)), and stated definitively that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," *id.* at 64. This court noted *Geiger*'s abrogation of *Cecchini* in *Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1038 (9th Cir. 2001).

Ditto contends, first, that the *Geiger* standard, decided well after her 1997 judgment of non-dischargeability became final, should not be retroactively applied to her case now. Second, she contends that her claim meets even the *Geiger* standard

because McCurdy's disclosure was so inadequate as to vitiate any consent, rendering his actions a battery.

A

[1] Ditto asks this court to review the grant of McCurdy's motion for summary judgment under the more liberal *Cecchini* standard, rather than retroactively imposing that established in *Geiger*. The general rule is that, when the Supreme Court:

> applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96 (1993). "So long as a case is sub judice, a federal court must apply a new and supervening rule of federal law when applicable to the issues in the case." *Wasserman v. Mun. Ct. of Alhambra Jud. Dist.*, 543 F.2d 723, 725 (9th Cir. 1976). Moreover, this circuit has applied *Geiger* itself retroactively in numerous cases. *See, e.g., Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207-08 (9th Cir. 2001); *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 869 (9th Cir. 2001); *Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999). The posture of this case differs from the cases cited above, however, because Ditto had already obtained a final judgment in 1996, which became non-appealable as of January 19, 1997—more than a year before *Geiger* was decided. Ditto maintains that the law as of that date ought to apply to this case, even after the former judgment was vacated following McCurdy's successful Rule 60(b) motion.

[2] This argument is misplaced. When a judgment has been set aside pursuant to Rule 60(b), the case stands as if that

judgment had never occurred in the first place.[4] The case remains open on direct review, and the court must apply the law as it stands, including any intervening precedents. *Geiger*'s interpretation of "willful and malicious" therefore controls our review of this case.[5]

B

In the alternative, Ditto asserts that, even under the heightened *Geiger* standard for "willful and malicious injury," this court should find that her malpractice judgment against McCurdy falls within the ambit of the § 523(a)(6) exception. As stated above, the Supreme Court stated in *Geiger* that the "willful and malicious injury" exception of § 523(a)(6) is limited to cases where the debtor not only meant to *act*, but meant to *cause injury*. 523 U.S. at 61-62. Notably, *Geiger* and the two circuit court precedents it explicitly overturned, *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir. 1987), and *In re Franklin*, 726 F.2d 606 (10th Cir. 1984), all involved cases of medical malpractice. Ditto distinguishes these cases, however,

---

[4]*See* 47 Am. Jur. 2d *Judgments* § 714 (2006) ("When a judgment has been rendered and later set aside or vacated, the matter stands precisely as if there had been no judgment. The vacated judgment lacks force or effect and places the parties in the position they occupied before entry of the judgment.") (citations omitted).

[5]Ditto also cites a three-part equitable exception to retroactivity contained in *Coopers & Lybrand v. Sun-Diamond Growers*, 912 F.2d 1135, 1138 (9th Cir. 1990). This exception is identical to that outlined by the Supreme Court in *Chevron Oil Co. v. Hudson*, 404 U.S. 97, 106-07 (1971), which the Court effectively overruled in *Harper*, 509 U.S. at 97-98 ("[T]he legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevai[l] over any claim based on a *Chevron Oil* analysis.' ") (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991) (opinion of Souter, J.)). This circuit has recognized that the *Chevron Oil* equitable exception "has been discredited by the subsequent Supreme Court decisions of *Griffith v. Kentucky* and *Harper v. Virginia Dept. of Taxation*." *United States v. Newman*, 203 F.3d 700, 701 (9th Cir. 2000) (citations omitted).

by asserting that her underlying claim is an intentional tort, which satisfies even the more stringent standard of *Geiger*. Her malpractice judgment rested, in part, on McCurdy's failure to adequately disclose the risks inherent in her surgery. *Ditto*, 947 P.2d at 960. This failure to disclose, Ditto contends, vitiated her consent to the procedure and rendered McCurdy's operation on her an unconsented touching—in other words, a battery.

[3] This argument fails. The failure to obtain informed consent, without evidence of intent to injure, does not give rise to a willful and malicious injury within the meaning of § 523(a)(6). While there are some cases that treat an informed consent action as sounding in battery,[6] most jurisdictions distinguish between *medical battery* (where the doctor has failed to obtain any authorization, or has gone well beyond the authorization given) and a *negligent failure to disclose*, with the latter sounding in negligence, rather than battery.[7] See generally W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 18 at 120-21 (5th Ed. 1984) (hereinafter "Prosser"); 70 C.J.S. *Physicians & Surgeons* § 122 (2005); 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* §§ 151-53 (2002). The action for informed consent, ultimately, focuses on the reasonableness of the physician's disclosure to the patient. *Canterbury v. Spence*, 464 F.2d 772, 780 & n.15 (D.C. Cir. 1972). It is the breach of this duty to disclose all the material risks a patient would need to determine his or her course of treatment, and the breach's causation of physical injury, that give rise to an action for informed consent. *Id.* at 780-82; Prosser § 32, at 190-92; 61 Am. Jur. 2d *Physicians, Surgeons, Etc.*

---

[6]*See, e.g., Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748-49 (Pa. 2002); *Bang v. Charles T. Miller Hosp.*, 88 N.W.2d 186, 190 (Minn. 1958); *Belcher v. Carter*, 234 N.E.2d 311, 312 (Ohio 1967).

[7]*See, e.g., Faya v. Almaraz*, 620 A.2d 327, 334 n.6 (Md. 1993); *Scott v. Bradford*, 606 P.2d 554, 557 (Okla. 1979); *Perin v. Hayne*, 210 N.W.2d 609, 617-18 (Iowa 1973); *Nishi v. Hartwell*, 473 P.2d 116, 118-19 (Haw. 1970), *overruled on other grounds, Carr v. Strode*, 904 P.2d 489 (Haw. 1995).

16434      DITTO v. MCCURDY

§ 153. The elements of this cause of action—duty, breach, causation, damages—are those of a negligence claim.

[4] Moreover, "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 604 (5th Cir. 1998). The Supreme Court in *Geiger* was clear that in order for the injury to be "willful and malicious," the debtor must intend the injury itself. *Geiger*, 523 U.S. at 61-62. The Restatement (Second) of Torts § 8A, a comment to which the Supreme Court cites favorably in *Geiger*, defines "intent" as "denot[ing] that the actor desires to cause consequences of his act, or that he believes the consequences are substantially certain to result from it." In order to qualify for the § 523(a)(6) "willful and malicious" exception to discharge, therefore, the debtor must have acted with either the desire to injure or a belief that injury was substantially certain to occur.[8] There is no evidence in the record that might lead a trier of fact to conclude that McCurdy had any such desire or belief. For this reason, we hold that McCurdy's debt to Ditto is not non-dischargeable under § 523(a)(6).

IV

While Ditto's original complaint made a brief reference to an objection to discharge pursuant to 11 U.S.C. § 727(a)(4) and (7), the focus was largely on the dischargeability of McCurdy's debt to Ditto. In 1997, following the judgment of non-dischargeability with respect to McCurdy's debts to her, Ditto voluntarily dismissed her § 727 objection. Now that judgment has been set aside, she seeks to amend her complaint to reinstate the objection to discharge.[9]

---

[8] *See In re Jercich*, 238 F.3d at 1208 ("[U]nder *Geiger*, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct.").

[9] McCurdy claims that Ditto has waived this argument because she did not present it as an issue in the "Statement of the Issues Presented" or the

[5] Rule 15(a) of the Federal Rules of Civil Procedure provides that, after the initial period for amendments as of right, pleadings may be amended only by leave of court, which "leave shall be freely given when justice so requires." *See* Fed. R. Bankr. P. 7015 (applying Fed. R. Civ. P. 15 to adversary bankruptcy proceedings). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). This court reviews a denial of a leave to amend a complaint for abuse of discretion. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292 (9th Cir. 1983). "The abuse of discretion standard requires that we 'not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached.' " *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) (quoting *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001)).

[6] The bankruptcy court granted McCurdy a discharge in bankruptcy on February 15, 2000. Ditto did not move to amend her complaint to restore her § 727 objection until May 25, 2001—more than fifteen months later. "[A] total bar to discharge is an extreme penalty." *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3d Cir. 1993). If the ordinary action of § 727(a)

---

"Statement of Appellate Jurisdiction" in her appeal to the district court, contrary to Bankruptcy Rule 8010(a). She did, however, address the issue in the *body* of her opening brief to the district court, and McCurdy responded to it in his answering brief. The district court reviewed the issue on the merits. On appeal to this court, the issue is raised properly and McCurdy responded. As such, there is no surprise or prejudice in raising it here, and the issue should be deemed ripe for review. *See, e.g., Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 691 (9th Cir. 1993) (permitting review of a denial to amend complaint where briefed by the parties and the appellee was not prejudiced).

16436         DITTO V. MCCURDY

is extreme, it must surely be still more extreme to order, retroactively, a revocation of the discharge.[10] Given the value of finality in bankruptcy, as well as the difficulty of unscrambling an egg by effectively revoking discharge (even Ditto's counsel, arguing before the bankruptcy court, characterized the consequences of granting the motion to amend as a "logistical nightmare"), we hold that the bankruptcy court did not err in denying Ditto leave to amend her complaint.[11]

AFFIRMED.

---

[10] Revocation of discharge, available under § 727(d), is typically limited to one year after discharge, and then only in exceptional circumstances. 11 U.S.C. § 727(e)(1).

[11] We also note that Ditto's original complaint in the adversary proceeding was based solely on the malpractice judgment and makes no mention of McCurdy's alleged misuse of the corporate form, which she now claims as the basis for her § 727 objection. Even if the amendment were allowed, any claim arising out of McCurdy's purported corporate fraud would not relate back to the original complaint because it does not "ar[ise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Hence, her claim would be untimely. See Fed. R. Bankr. P. 4004(a) (limiting § 727(a) objections to "60 days after the date of the first date set for the meeting of creditors under [11 U.S.C.] § 341(a)").

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.